UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ANDREA MARIE GENTILE,

                              Plaintiff,

               against,                      **MEMORANDUM AND ORDER**
                                                                   22-cv-7731 (LDH)

KILOLO KIJAKAZI,

                              Defendant.

---

LaSHANN DeARCY HALL, United States District Judge:

      Andrea Marie Gentile ("Plaintiff") appeals an Administrative Law Judge's ("ALJ") final decision dated July 21, 2022 (the "Final Decision"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Plaintiff moves pursuant to Rule 12(c) for judgment on the pleadings reversing the Commissioner's decision and remanding for additional proceedings. (Pl. Mem, ECF No. 17.) Defendant moves pursuant to Rule 12(c) for judgment on the pleadings affirming the Commissioner's decision. (Def. Mem., ECF No. 15.)

## DISCUSSION

      Under the Act, a plaintiff may seek judicial review of the Commissioner's decision to deny her application for benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Felder v. Astrue*, No. 10-cv-5747, 2012 WL 3993594, at *8 (E.D.N.Y. Sept. 11, 2012). In conducting such a review, the Court is tasked only with determining whether the Commissioner's decision is based upon correct legal standards and supported by substantial evidence. 42 U.S.C. § 405(g); *see also Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citing *Shaw v. Chater*, 221 F.3d 126,

131 (2d Cir. 2000)).  The substantial-evidence standard does not require that the Commissioner's decision be supported by a preponderance of the evidence.  *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) ("[A] factual issue in a benefits proceeding need not be resolved in accordance with the preponderance of the evidence . . .").  Instead, the Commissioner's decision need only be supported by "more than a mere scintilla" of evidence, and by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019).

Plaintiff raises four arguments on appeal:  (1) Plaintiff has a condition that meets or equals one or more of the listed impairments; (2) the ALJ failed to properly weigh the medical source opinions in the record; (3) the ALJ impermissibly "cherry picked" from the record, selecting portions of the record to support an unfavorable ruling to the exclusion of substantial evidence to the contrary; and (4) the ALJ improperly relied in part on opinion testimony from a vocational witness that lacked adequate foundation.  (Pl. Mem. at 10.)  The Court rejects each argument.

### A. Consideration of the Listed Impairments

An ALJ considering a claimant's entitlement to benefits must determine whether that claimant's impairment(s) meets or equals an impairment catalogued in "the Listing of Impairments" (the "Listing").  *See* 20 C.F.R., Pt. 404, Sub Pt. P, App'x 1.  The Listing describe specific impairments for each of the major body systems, which are considered "severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).  Most of these impairments "are permanent or expected to result in death." 20 C.F.R. § 404.1525(c)(4).  For some impairments, the evidence

must show that the impairment has lasted for a specific time period. 20 C.F.R. § 1525(c)(4). "For all others, the evidence must show that [the] impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* A claimant is presumptively disabled if her impairment meets or equals a listed impairment. *See, e.g.*, *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("If the claimant's impairment is one of those listed [in Appendix 1], the SSA will presume the claimant to be disabled."). If the impairment is not so listed, then the ALJ must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. *Id.* Section 12.03 of the Listing states the elements for schizophrenia spectrum and other psychotic disorders.

According to Plaintiff, the ALJ's decision was "clearly erroneous" because Plaintiff is reported to have suffered "paranoid thinking," which amounts to delusions or hallucinations under Part A(1) of the Listing, and Plaintiff satisfies Part B because she received marked limitation for all four criteria. (Pl. Mem. 12.) However, the sole evidence that Plaintiff points in support of her "paranoid thinking" is Dr. Ruiz's assessment dated March 2022, *i.e.*, 13 years *after* Plaintiff turned 22. (Pl. Mem. at 12 (citing (Tr. 6570).) Even if the 2022 assessment purports to describe Plaintiff's condition 13 years earlier (which is unclear from the face of the assessment), the ALJ addressed Dr. Ruiz's assessment and explained why it was inadequate to establish the criteria "during the relevant period." (Tr. 15) ("Nor is there evidence of marked limitations in daily activities, social functioning or limitations in completing tasks in a timely fashion. With respect to schizophrenia, particular attention has been given to section 12.03 of the Mental Disorders Listings. However, the claimant was not diagnosed with this impairment until well after the period under adjudication. It has been diagnosed by Dr. T. Ruiz, who has treated

3

the claimant since June 2013, and Dr. Ruiz did not diagnose this condition at that time. It was not reached until sometime later."). *See Marchand v. Commissioner*, 2021 WL 4805215, at * 1 (2d Cir. 2021) (summary order) (in this disabled adult child case, "the ALJ appropriately gave the greatest weight to the record evidence closest in time to the relevant period (before Marchand turned 22 in 1985) and less weight to the evidence farthest in time from the relevant period").

Likewise, Plaintiff exclusively relies on Dr. Ruiz's opinion in support of her claim that she met the Part B criteria in the Listing. (Pl. Mem. at 12 (citing 6568-70).) But, even assuming the presence of an impairment during the adjudication period, the ALJ explained how "the treatment record fails to establish that it would have produced marked or severe limitations under the 'paragraph B' criteria of this section." (Tr. 15.) Importantly, "Dr. Ruiz had no treatment relationship with [Plaintiff] during the adjudication period" and "she did not begin treating her until June 2013." (Tr. 25.) In any event, the ALJ observed how "Dr. Ruiz's opinion statement consists of a series of checked boxes on a pre-printed form indicating marked limitations for most the work-related functions," much of which was belied by other evidence on the record. (Tr. 26) ("In essence, Dr. Ruiz's opinion is not supported their own longitudinal treating notes, and it is inconsistent with the overall evidence in the file."). Finally, as mentioned, it remains unclear whether Dr. Ruiz even purported to describe Plaintiff's conditions during the relevant period, or her conditions as of the assessments. If the latter, subsequent medical opinions cannot be read to comment on conditions prior to age 22. *Caldwell v. Comm'r of Soc. Sec.*, No. 20-4077-CV, 2022 WL 728661, at *2 (2d Cir. Mar. 11, 2022) (rejecting report from 2012 as establishing that impairment existed before claimant turned 22 in 1986).

Finally, although Plaintiff contends "[t]he record contains no conflicting opinions from any competent source," (Pl. Mem. 12), the ALJ maintains discretion to accept or reject treating source medical opinions. *Schillo v. Kijakazi*, 31 F.4th 64, 79 (2d Cir. 2022) (affirming decision where "ALJ articulated 'good reasons' for assigning little weight and partial weight to Dr. Shukri's opinions and partial weight to Dr. Picciano's opinions: their opinions were conclusory, inconsistent with the objective medical evidence, and unhelpful in assessing Schillo's RFC.").

Thus, because the ALJ appears to have appropriately discounted Dr. Ruiz's conclusory and backwards looking assessment, Plaintiff did not satisfy the criteria under 20 C.F.R. § 404 to be considered presumptively disabled.

**B.     The ALJ's Consideration of Medical Source Opinions**

When evaluating the persuasiveness of medical opinions, the Commissioner will consider the following five factors: (1) supportability; (2) consistency; (3) relationship of the source with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship is an examining relationship; (4) the medical source's specialization; and (5) other factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the agency] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Using these factors, the most important of which are supportability and consistency, the ALJ must articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 404.1520c(b).

5

Plaintiff argues that the ALJ "failed to articulate specifically in her decision the extent to which she considered the supportability or consistency factors in evaluating the opinion evidence." (Pl. Mem. 16.) Plaintiff cites nowhere to the ALJ decision in making this broad and sweeping accusation. (*Id.*) In any event, the argument ignores the extensive analysis given by the ALJ to the consistency and supportability—or lack thereof—in Dr. Ruiz's opinions. As the ALJ explained, Dr. Ruiz's opinions were not supported because Dr. Ruiz did not treat Plaintiff until several years after the relevant period, they were vague or provided in a check box format with no supporting explanations, and Dr. Ruiz's own mental status findings contradicted the degree of limitation she opined. (Tr. 25-26.) As for consistency, the ALJ explained that Dr. Ruiz's opinions were "inconsistent with the overall evidence in the file" including Plaintiff's demonstrated ability before reaching age 22 to finish high school in regular classes, attend college classes to obtain a degree (albeit with some accommodations), and do volunteer work. Tr. 25-26; see Tr. 52-53; 5809, 5851, 5856.

And, as Plaintiff herself acknowledges, (Pl. Mem. at 15), the ALJ made findings with respect to the remaining medical opinions of (a) Dr. S. Tayab (Tr. 84-91), a non-examining agency consultant, which she considered "not persuasive;" (b) Dr. V. Ng (Tr. 93-106), a non-examining agency consultant, which she considered "not persuasive;" (c) Dr. Vivian Kafantaris (Tr. 583-84, 5809), the claimant's treating psychiatrist, which she considered "not a medical opinion;" (d) Dr. Irene Rosenberg (Tr. 6571), the claimant's treating dermatologist, which she considered "incoherent;" and (e) Dr. Teresita Ruiz (Tr. 5537-40, 6568-70), the claimant's treating psychiatrist, which she considered "vague," "not persuasive," and "not supported."

6

Plaintiff further argues that by not finding any medical opinion in the record persuasive, the ALJ improperly substituted his own lay judgment for that of medical professionals. (Pl. Mem. 16.) As the Second Circuit has explained, however, an "RFC finding is administrative in nature, not medical," therefore an ALJ is not making a medical determination when he assesses a claimant's RFC based on medical and other evidence in the record. *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) ("The ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination."); *see also Berrechid v Comm'r. of Soc. Sec.*, 20-CV-5342 (BMC), 2021 WL 5013657 (E.D.N.Y. Oct. 28, 2021) ("Considering the anomalies in both Dr. Kirzhner and Dr. Kim's medical source statements, it is plain that the ALJ relied more heavily on the other evidence in the record than on the medical opinion evidence. That is something the law allows her to do.").

Thus, the ALJ properly assessed all medical opinions, explained her reasons for giving more weight to some than others, and properly used the relevant medical opinions to render a finding as to Plaintiff's RFC.

### C. The ALJ's Selection of Evidence from the Record

Courts have held that an ALJ may not "cherry pick" the record by selectively relying on portions to support a particular ruling in light of all the evidence. *See e.g.*, *Pluck v. Astrue*, No. 10-CV-02042, 2011 WL 917654, at *19 (E.D.N.Y. Mar. 9, 2011) ("Given the ALJ's duty to consider Pluck's account of her limitations against the background of the full record, and her obligation to develop that record where necessary, the ALJ's selective reading of the evidence was improper."); *Fuller v. Astrue*, No. 09–CV–6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec.

6, 2010) ("Essentially, the ALJ cherry-picked several opinions that were supportive of her decision and disregarded the majority of the medical evidence in the record including that of the treating physicians. This type of selective analysis of the record is improper.").

According to Plaintiff, "[t]he unfavorable decision is replete with instances where the [ALJ] relied on portions of the claimant's medical records to reach her conclusion, while ignoring other portions of those same records which contradict her conclusion." (Pl. Mem. 18.) As examples, Plaintiff notes how the ALJ "dismissed the documentation in the record from Dr. Kafantaris as not containing 'medical opinions,' and refers to a note excusing the claimant from attending school." (Pl. Mem. 18-19 (citing (Tr. 25).) Yet, according to Plaintiff, the ALJ "ignores entirely other documentation from this same treating source in which Dr. Kafantaris states that the claimant had been 'under [her] care for treatment of depression since March 2004,' 'had significant difficulty concentrating,' and was 'experiencing frequent fatigue.'" (Pl. Mem. 19) (citing (Tr. 5809).) As another example, the ALJ "refers to testimony from the claimant that 'she attended classes and graduated from college with a degree in English,' but ignores entirely additional testimony from the claimant that she was unable to graduate in the standard four years and was forced to take several leaves of absence due to her psychiatric symptoms, and even then only graduated after receiving special accommodations (additional time on tests, class notes taken by others)." (Pl. Mem. 19.)

As an initial matter, despite the broad accusation from Plaintiff that the ALJ cherry picked from the voluminous record, she only provides two examples. As to the first, regarding Dr. Kafantaris, Plaintiff appears to argue that the ALJ considered her school excusal notes but not another dated June 9, 2004, commenting on Plaintiff's historic depression, difficulty

concentrating, and fatigue. (Pl. Mem. at 19.) But this assertion seems belied by the record; the ALJ specifically cited other notes from Dr. Kafantaris (dated November 11, 13, and 25, 2009), indicating that Plaintiff "was suffering from a mood disorder with difficulty reading due to concentration difficulties." (*Id.* at 20-21) (citing Tr. 586, 595-96.) That the ALJ did not specifically cite the June note is of no moment considering she cited ample other notes that reflect the same substance. In any event, the ALJ appropriately found that "[t]he letters at Exhibits 2F and 26F written Dr. Vivian Kafantaris requesting that the claimant be excused from attending school and from completing a school assignment due to her medical conditions"—which includes the June 9 letter—"*are not medical opinions*." (Tr. 24) (emphasis added).

As to the second example, Plaintiff claims the ALJ highlighted her graduation from college but ignored "that she was unable to graduate in the standard four years and was forced to take several leaves of absence due to her psychiatric symptoms, and even then only graduated after receiving special accommodations." (Pl. Mem. 19.) Again, this assertion is belied by the record. The ALJ expressly acknowledged that Plaintiff received accommodations and took a medical leave of absence during college before eventually graduating. *See* (Tr. 18-19) ("She completed a Bachelor's Degree in English in 2011 from Queens College, where she attended from 2005 through 2011. During her educational career, both high school and college, she was given accommodations to complete classes, such as extra test taking time and a notetaker."); (Tr. 21) ("In 2009, the claimant requested a medical leave from school."); (Tr. 26) (acknowledging that Plaintiff received "extra time for exams and help with notetaking for classes").

Thus, the ALJ properly considered the entirety of the record evidence and did not improperly cherry pick to support her judgment.

9

D.     **Testimony from the Vocational Expert**

When posing hypothetical questions to a vocational witness, an ALJ must pose questions "which reflect the full extent of the claimant's capabilities and impairments to provide a sound basis for the [witness]'s testimony." *Jehn v. Barnhart*, 408 F. Supp. 2d 127, 135 (E.D.N.Y. 2006) (*quoting Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 450 (S.D.N.Y. 2004)). "The vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Thus, there "must . . . be 'substantial record evidence to support the assumption upon which the vocational expert based his opinion." *Sanchez*, 329 F. Supp. 2d, at 450 (*quoting Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)).

According to Plaintiff, "[t]he hypothetical posed by the administrative law judge was not supported by substantial evidence" because "the assumption that the [ALJ] asked the witness to accept, that the claimant is able to perform tasks in a 'low stress' setting, has expressly been discounted by the agency in a previous ruling." (Pl. Mem. 20-21.) Plaintiff then cites to agency policy stating:

> "Mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. . . . Thus, the mentally impaired may have difficulty meeting the requirements of even so-called 'low stress' jobs.
>
> "Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. . . . [A]n individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the

10

>>supervision is remote and direct, can be intolerable for some mentally impaired persons."

(Pl. Mem. at 21 n.3) (citing SSR 85-15.)

      Here, as a threshold matter, SSR 85-15 merely notes that a particular claimant's mental impairments "may" preclude even unskilled or low stress work; however, SSR 85-15 expressly states that it does not "set out any presumptive limitations." More critical, "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion, and accurately reflect the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (interna citations and quotation marks omitted). Although cognitive testing in 2005 and 2006 showed that Plaintiff had some cognitive deficiencies requiring testing accommodations, those tests never go so far as to say Plaintiff could not attend college at all; in fact; they recommend accommodations so that Plaintiff could *continue* attending college. (Tr. 583, 590.) Just the same, the record supports that Plaintiff was capable of working within the limited scope of the RFC, subject to the limitations referenced by the ALJ. (Tr. 17-18) ("After careful consideration of the entire record, the undersigned finds that, prior to attaining age 22, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following limitations . . . ."). Thus, the vocational expert appropriately answered the "low stress" hypothetical because it matched the record evidence as to Plaintiff's ability to work before age 22. *See Colvin*, 758 F.3d at 151 ("The hypothetical presented to the vocational expert, James R. Newton, closely tracked the ALJ's residual functional capacity assessment made at Step Four of the analysis, which, as the Commissioner

concedes, failed to mention explicitly McIntyre's non-exertional limitations. The hypothetical added, however, a limitation to 'simple, routine, low stress tasks.'").

Plaintiff also claims the ALJ "ma[de] no mention of a second hypothetical she posed to the witness, in which the hypothetical claimant would need reminders to perform tasks occasionally throughout the day." (Pl. Mem. (citing Tr. 75).) According to Plaintiff, the ALJ ignored "testimony regarding usual tolerances in the work place for absenteeism" and "for time off task." (Pl. Mem. 21.) And the ALJ purportedly failed to address "that the claimant would not be employable if she were unable to tolerate interactions with supervisors." (*Id.*)

In referencing one hypothetical but not another in the RFC finding, the ALJ implicitly found the excluded evidence to be irrelevant. *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983) ("Dumas mistakenly argues that the vocational expert's negative response to the following hypothetical establishes his inability to perform gainful employment . . . Having discounted Dumas' assessment of the severity of his headaches, the ALJ was entitled to rely on the vocational expert's prior opinion that Dumas possessed the skills necessary to perform the job of timekeeper."). In any event, as discussed above, the ALJ appears to have appropriately found that Plaintiff could perform simple routine tasks in spite of her cognitive limitations. *See* (Tr. 26) (emphasizing that despite allegedly having marked limitations, Plaintiff "attended classes and graduated from college with degree in English" with minimal accommodations).

Thus, the ALJ appropriately relied on the vocational expert's testimony regarding a hypothetical, which was supported by substantial evidence in the record, in finding that Plaintiff could perform jobs before reaching age 22.

12

## CONCLUSION

For the foregoing reasons, Plaintiff's motion (ECF No. 17) for judgment on the pleadings is DENIED, and Defendant's motion (ECF No. 15) for judgment on the pleadings is GRANTED. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

Dated: Brooklyn, New York
      March 29, 2024

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

13